IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DARRAIN JUSTICE LOUIS SPIVEY | * |
| Plaintiff, | |
| v. | * CIVIL ACTION NO. RDB-05-1922 |
| | |
| WARDEN KATHLEEN GREEN | * |
| JON P. GALLEY | |
| COMMISSIONER FRANK SIZER | * |
| In their individual and official capacities | |
| Defendants. | * |
| | *** |

## MEMORANDUM OPINION

**I.   Background**

Plaintiff Darrain Spivey ("Spivey"), a Division of Correction ("DOC") inmate with Multiple Sclerosis ("MS") who is wheelchair-bound, filed this 42 U.S.C. § 1983 action for injunctive and declaratory relief and damages while confined at the Eastern Correctional Institution ("ECI"). He sues the Wardens of ECI and the Western Correctional Institution ("WCI") and former DOC Commissioner Sizer in their capacities as administrators of the operations of ECI, WCI, and the DOC.

Spivey claims that Commissioner Sizer permitted Warden Galley to "bend" state and federal laws by sending him from WCI to ECI, which is not equipped to house disabled inmates. (Paper No. 1). He asserts that WCI is the best place to handle his disabilities and medical problems associated with MS.[1] (*Id.*)  In addition, Spivey alleges that Warden Galley transferred

---

[1] Spivey claims that ECI does not have adequate showers, baths, toilets, beds, and exercise options and does not provide programming to accommodate handicapped inmates. (Paper No. 1.) He alleges that the ECI infirmary is not built to deal with disabled inmates and is not adequately staffed with nurses to help them with personal hygiene. (*Id.*) He further asserts that he was denied his personal property. (*Id.*) The allegations provided in the Complaint are vague and conclusory at best, and the attachments thereto marginally elucidate the claims. Spivey asserts that: (i) on May 5, 2005, his watch was taken and he was moved to an ECI cell with bright lights and no running water, mattress, change of briefs, or shower and forced to sleep in urine; and (ii) after his transfer to ECI on April 25, 2005, he noticed that three of his legal books were missing. (*Id.* at Attachments).

him in retaliation for filing complaints and has also "use[d] racial discrimination" in making transfer determinations.[2] (Paper No. 1.) He claims that transferring him to ECI violates his rights under state law, the U.S. Constitution, the Americans With Disabilities Act ("ADA"), and the § 504 of the Rehabilitation Act ("RA"). (*Id*.)

On July 11, 2006, the Court denied, without prejudice, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[3] (Paper No. 33.) The Court found that as Plaintiff had been transferred back to WCI, his injunctive relief request had been rendered moot. It concluded, however, that further briefing was necessary in light of: (1) Defendants' failure to respond to and defend the Eighth Amendment conditions and medical claims, the First and Fourteenth Amendment retaliation and discrimination claims, and the claims raised under the RA, and (2) intervening Supreme Court[4] case law involving the abrogation of sovereign immunity under Title II of the ADA.[5]

## II.     Pending Motions

---

[2]     Spivey, who is African-American, claims that when a Caucasian inmate housed in the WCI infirmary for many years displayed aggressive and threatening behavior he was not transferred to another prison. (Paper No. 1.)

[3]     Defendants had argued that the cause of action was subject to dismissal because: (i) Spivey has no constitutional right to be assigned to a particular prison; (ii) Spivey is barred from seeking damages under Title II of the ADA under the existing caselaw; (iii) any alleged loss of personal property is not colorable under § 1983 due to the availability of a post-deprivation remedy; and (iv) they are entitled to qualified immunity as to all claims.

[4]     In *United States v. Georgia*, *et al*., 546 U.S. 151, 126 S.Ct. 877 (2006), a paraplegic prisoner sued state defendants and others challenging the conditions of his confinement under, *inter alia*, § 1983 and Title II of the ADA. The ADA damage claim was dismissed as barred by state sovereign immunity by the district court. That decision was affirmed by the circuit court. The Supreme Court granted certiorari to decide the validity of Title II's abrogation of state sovereign immunity and held that Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against the states for conduct that actually violates the Constitution. *Id*. at 880-882.

[5]     Plaintiff's interlocutory appeal of this Court's July 12, 2006 decision was dismissed by the United States Court of Appeals for the Fourth Circuit. (Paper Nos. 41 & 42.)

Pending before this Court is Defendants' Supplemental Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Paper No. 51) and Spivey's Opposition thereto. (Paper No. 53).   In addition, on May 21, 2007, Spivey filed a Motion for Leave to File an Amended Complaint.  (Paper No. 55.)    The Motions may be determined on the pleadings.  Oral hearing is not required.  *See* Local Rule 105.6. (D. Md. 2004).  For the reasons stated below, Defendants' Motion for Summary Judgment is granted, and the Plaintiff's Motion for Leave to File an Amended Complaint is denied.

### III.   Standard of Review

<u>Motion to Dismiss</u>

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices.  *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

<u>Motion for Summary Judgment</u>

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is

no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).)

With these standards in mind, the Court will review Spivey's claims *seriatim*.

## III.   Analysis

Transfer to ECI

Defendants maintain that Spivey's protestations to the contrary, he was not transferred from the WCI infirmary to ECI in retaliation for filing litigation or due to his race. They assert that the April 20, 2005 transfer was carried out to protect Spivey because he claimed that he had been assaulted by WCI infirmary inmate Eric Gilyard in the infirmary recreation hall on March 25, 2005. (Paper No. 51, Ex. 1.) The case management team recommended that Spivey be placed on administrative segregation and then transferred to ECI to separate him from Gilyard. (*Id.*, Exs. 1-4.) He was returned to WCI five months later. (*Id.*, Ex. 4.) Gilyard was no longer at WCI at that time.[6] (*Id.*)

Plaintiff has no general constitutional entitlement to be housed at a particular prison. *See Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1493 (4th Cir. 1987). Further, aside from his conclusory allegations of retaliation and discrimination, he has presented no evidence refuting Defendants'

---

[6] According to Spivey's Opposition, Gilyard has been returned to WCI and is housed in the WCI infirmary with him. (Paper No. 55.) Spivey claims that due to the past problem with Gilyard, he has been on WCI infirmary "administrative segregation" since February of 2006. (*Id.*)

claim that he was transferred to ECI for safety and security reasons arising from his claim that Gilyard had assaulted him in March of 2005. The Court finds that Defendants are entitled to judgment on this claim.

Medical Care and Accommodations Under the ADA and RA

Spivey was transferred to ECI on April 20, 2005, remained at WCI for five months, and was transferred back to WCI on September 14, 2005. (Paper No. 51, Ex. 4.) While housed at ECI, he was classified to "medical/unassigned." (*Id*.) Defendants state that during that time, ECI was accredited by the American Correctional Association ("ACA") and the health care unit or infirmary was licensed by the Maryland Department of Health and Mental Hygiene ("MDHMH"). (*Id*., Exs. 5 & 6.)

According to the record, the ECI infirmary follows a number of protocols governing special needs and disabled inmates. (*Id*., Exs. 7-13.) Defendants assert that, according to policy and procedures, during his stay in the ECI infirmary Spivey was monitored by health care staff 24 hours a day, seven days a week, by onsite supervision of the Director of Nursing or the registered nurse designee. (*Id*., Ex. 8.) They allege that each of the infirmary inmates is within sight and/or sound of the healthcare staff at all times, the infirmary has access to a physician on call at all times, medical rounds are made each shift, and physically disabled inmates are assessed and monitored as needed by medical or mental health staff. (*Id*.)

The record generally shows that inmates in the infirmary are provided hygiene care each day, including self care or care by the nursing staff. (*Id*., Exs. 12 & 13.) This procedure involves assistance with hair combing, washing of the face and genital areas, back rubs, and the straightening of bed linens. (*Id*.) During the time that Spivey was in the ECI infirmary, there were handicapped-accessible showers located in an adjacent area within the confines of the

infirmary.  (*Id.*, Ex. 14.)  Defendants acknowledge, however, that in the Fall of 2005, the infirmary was renovated to provide further handicapped accessibility with the widening of the bathroom and shower doorway and the installation of a handicap-accessible sink and toilet. (Paper No. 51, Exs. 6 & 14.)

Defendants state that MDHMH personnel inspected the ECI infirmary in March of 2004, found no violations of the ADA, and noted that there was reasonable accessibility to the bathrooms and showers, and drinking water was available with the assistance of staff.  (*Id.*, Ex. 15.).  Defendants argue that Spivey received daily medical care and attention at ECI from April 20, 2005, to September 14, 2005, and that he had few medical complaints.[7]  (*Id.*, Ex 17 at 1-2, & 4-235.)   They note he was placed in an isolation cell for two days, from May 5, 2005, to May 7, 2005, because he reported that he was on a hunger strike and wanted to sign off on some of his medications.  (*Id.*, Ex. 17 at 43-45; Ex. 19.)   Defendants maintain that Spivey received constant medical attention during this time and had no complaints.[8]  (*Id.*, Ex. 17.)

To state an Eighth Amendment medical indifference claim, a  plaintiff must prove that the health care provider "knows of and disregards an excessive risk to inmate health and safety; the [healthcare provider] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave

---

[7] Defendants do not dispute that Spivey is disabled.

[8] The medical record shows that at various times during his confinement in the ECI infirmary Spivey did complain of the need for adult wipes, the lack of  bowel movements, vision and hearing loss, minor achiness, itchy scalp and groin, lower back and leg pain, dry/cracked feet, and incontinence.  He was provided assistance and hygiene items by health care staff, was referred to and seen by an ophthalmologist, received an audiogram and CT scan of the temporal bones, and was given Tylenol, Selsun shampoo, and Miconazole cream.

rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).

Spivey has MS, with related deconditioning, and a seizure disorder, and has been diagnosed with a personality disorder. The record shows that Spivey received constant care, *e.g.*, daily monitoring by staff, medications, showers, physical therapy, proper diet, and testing while assigned to the ECI infirmary, and he remained clinically stable throughout his confinement at ECI. Spivey has failed to demonstrate that he was denied proper medical attention and that he suffered harm as a result.[9] Defendants are entitled to judgment as to this Eighth Amendment claim.

Spivey's ADA and RA claims are subject to summary judgment in favor of Defendants. First, the Court finds that Spivey has failed to demonstrate that his rights under the ADA and RA were violated.[10] Title II of the ADA, 42 U.S.C. § 12131, *et seq*., prohibits qualified individuals with disabilities from being excluded from participation in or being denied the benefits of the

---

[9] Moreover, Spivey has failed to establish liability on the part of Defendants in their official capacities as Wardens and Commissioner, by failing to show, much less allege, personal involvement on the part of Defendants. In general, supervisory liability may be established by showing the supervisor's: (1) actual or constructive knowledge that subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) inadequate response to that knowledge, demonstrating deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) inaction that is causally linked to a particular constitutional injury. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Section 1983 liability on the part of Defendants with regard to Spivey's medical care requires a showing that they: (1) failed promptly to provide Plaintiff with needed medical care, (2) deliberately interfered with the prison doctors' performance, or (3) tacitly authorized or were indifferent to the prison physicians' constitutional violations. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Spivey has failed to make such a showing.

[10] In his Opposition, Spivey claims that (1) the ECI infirmary had no disabled restrooms and showers and at times he had to be carried into the bathrooms by inmate workers; and (2) unlike WCI, the ECI infirmary had no on-site physical therapist. (Paper No. 53.) He alleges that ECI infirmary lacked adequate showers, baths, toilets, beds, exercise, programs, housing, and conditions. (*Id*.)

services, programs or activities of a public entity.[11]   To make out a *prima facie* case under the ADA, Spivey must show that: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; (3) he was excluded from the benefit due to discrimination based upon disability; and (4) the entity that provides the benefits is a public entity.  *See* 42 U.S.C. § 12132; *Doe v. University of Maryland Medical System*, 50 F.3d 1261, 1265 (4th Cir. 1995); *Hallett v. New York*, 109 F.Supp.2d 190, 198 (S.D. N.Y. 2000).  To establish a violation of the RA, Spivey must prove he: (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) was excluded from same due to discrimination solely on account of the disability.  *See* 29 U.S.C. § 794(a); *Doe*, 50 F.3d at 1265; *Bane v. Virginia Dep't of Corrections*, 267 F.Supp.2d 514, 520  (W.D. Va. 2003). Consequently, both the ADA and RA require that Spivey show wrongful discrimination based upon his disability.  Spivey has failed to prove violations of the ADA and RA as the evidence here does not support a finding that he suffered wrongful discrimination due to his disability.[12]

Further, as noted by Defendants, in *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877 (2006), the Supreme Court held that to deliberately refuse to accommodate a prisoner's disability-related medical needs constitutes the denial of a fundamental right under the ADA.

---

[11]   The treatment, or lack of treatment, concerning Spivey's medical condition does not provide a basis upon which to impose liability under the ADA.  *See Burger v. Bloomberg,* 418 F.3d 882, 883 (8th Cir. 2005) (medical treatment decisions not a basis for RA or ADA claims); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (RA not intended to apply to medical treatment decisions); *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within scope of ADA or RA); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996) ( "The ADA does not create a remedy for medical malpractice." )

[12]   Inasmuch as Title II of the ADA is modeled on § 504 of the Rehabilitation Act, "decisional law" is used "interchangeably."  *See Kiman v. New Hampshire Dep't of Corrections*, 451 F.3d 274, 285 n.10 (1st Cir. 2006).

The reasonable accommodation requirement under the ADA usually does not apply unless "triggered" by a request. *See Kiman*, 451 F.3d at 283. There is no evidence that Spivey communicated his wish for additional accommodations to Defendants.

Finally, the ADA defines "public entity" in relevant part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *See* 42 U.S.C. § 12131(1)(A)-(B). The term "public entity," "as it is defined within the statute, does not include individuals." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999); *see also* 42 U.S.C. § 12131(1). "In suits under Title II of the ADA...the proper defendant usually is an organization rather than a natural person....Thus, as a rule, there is no personal liability under Title II." *Walker v. Snyder,* 213 F.3d 344, 346 (7th Cir.2000); *accord Miller v. King,* 384 F.3d 1248, 1276-77 (11th Cir. 2004). Individual liability is precluded under ADA Title II.

Spivey's ADA damage claim rests against individual Defendants who are not the proper parties, because the ADA imposes obligations on government entities, not individual government officials.[13]

In sum, Spivey was transferred from the WCI infirmary, which he preferred, to the ECI infirmary, which is contained in an older prison and may not have the most updated facilities. The fact remains, however, that health care personnel addressed his medical needs for that five-month period with little complaint from Spivey. Indeed, upon his return to WCI, he thanked ECI infirmary staff for their professional care and indicated that the "medical staff here at ECI is

---

[13] The RA provides disabled individuals redress for discrimination by a "public entity" which receives federal funds. Consequently, it would also appear that individual liability is not contemplated under § 504 of the RA. *See Lollar v. Baker,* 196 F.3d 603, 609 (5th Cir. 1999); *Dunion v. Thomas*, 457 F.Supp.2d 119 (D. Conn. 2006); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F.Supp.2d 543, 557 (D. N.J. 2000).


greater then WCI medical staff..."[14]  Further, there is no record that he sought an accommodation to address the services that he now claims he was not provided or that he was denied the services in a discriminatory manner based upon his disability.

### Conditions of Confinement

Spivey complains about the conditions of his confinement while in isolation for two days in May of 2005.  He states that the cell had bright lights and no running water or mattress, he was not provided a change of briefs or shower, and he was forced to sleep in urine.

Spivey may set out an Eighth Amendment conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions.  *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993).  Only extreme deprivations are adequate to satisfy the object component of an Eighth Amendment claim.  *See Hudson v. McMillian*, 503 U. S. 1, 9 (1992).  Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *see  Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions.  *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993).  The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner.  *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).  Spivey must "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

---

[14]    (Paper No. 51, Ex. 18.)

Spivey has failed to demonstrate that he was, in any way, harmed or injured by his stay in observation or isolation cell in the ECI infirmary from May 5 to May 7, 2005. The detailed record shows that he voiced no major complaints during that stay. (Paper No. 51, Exs. 17 & 19.) Consequently, Defendants shall be granted summary judgment as to this issue.[15]

Loss of Property

Spivey claims that while in isolation his watch was taken and he noticed that three of his legal books were missing. To the extent that personal property may have been lost, such an injury does not implicate a constitutional violation under the Due Process Clause because Spivey has available post-deprivation remedies through the administrative remedy and state court process. *See Parratt v. Taylor*, 451 U.S. 527, 542-43 (1981), overruled on other grounds by *Daniel v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (rejecting procedural due process claim for alleged intentional deprivation of property by state employees where a meaningful post-deprivation remedy for the loss was available). Moreover, Spivey has failed to project evidence which establishes that the alleged loss of his legal books has prejudiced his case(s) so as to deny him his constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) (the deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation). Defendants are entitled to judgment as to this claim.

---

[15] In addition, Spivey has failed to show supervisory liability on the part of Defendants with regard to the conditions of his confinement. *See Shaw*, 13 F.3d at 799.

**IV.     Conclusion**

For the aforementioned reasons, Defendants' Supplemental Motion to Dismiss or for Summary Judgment, treated as a Motion for Summary Judgment, is granted.[16]  A separate Order follows.

/s/

Date:   June 18, 2007                                    _____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[16]     Spivey has filed a Motion for Leave to File an Amended Complaint seeking to add the name of inmate Lamont Young as a party Plaintiff.  (Paper No. 55.)  In addition, he asks to include unspecified "new different facts or new claims." (*Id.*)  In light of the supplemental responsive pleading filed by Defendants and the findings of this Court, the Motion shall be denied.